Raymond F. LACKNER, Appellant

v.

Daniel S. GLOSSER, Individually, and t/d/b/a Glosser Manufacturing, Inc.; M. Glosser & Sons, Inc., a Pennsylvania Private Business Corporation; the David A. Glosser Foundation; Lesdan Realty, Inc., a Pennsylvania Business Corporation; James Saly, an Individual; and Barnes, Saly & Company, LLP, a Limited Partnership, Appellees

Superior Court of Pennsylvania.

Argued May 25, 2005.

Filed Jan. 26, 2006.

Lawrence G. Zurawsky, Pittsburgh, for Lackner, appellant.

John H. Riordan, Jr., Pittsburgh, for Saly, appellee.

Michael P. Robic, II, Pittsburgh, for M. Glosser & Sons, appellee.

Before: HUDOCK, ORIE MELVIN, and McCAFFERY, JJ.

McCAFFERY, J.:

¶ 1 Appellant, Raymond F. Lackner, appeals from the order of the Honorable Ronald W. Folino entered on August 24, 2004, in the Court of Common Pleas of Allegheny County, granting summary judgment in favor of Appellees and dismissing in its entirety Appellant's amended complaint. Specifically, Appellant asks us to determine whether genuine issues of material fact exist to support his counts sounding in breach of contract, unjust enrichment, and civil conspiracy. Because we conclude that there are no genuine issues of material fact, we affirm.

¶ 2 The relevant facts are as follows.[1] In 1983, Appellee, Daniel S. Glosser ("Glosser"), president and controlling shareholder of Appellee, M. Glosser & Sons, Inc. ("the Corporation"), hired Appellant to be the Corporation's Executive Vice President. Appellant received an initial salary of $50,000 and was entitled to receive bonuses on any after-tax profits of the Corporation. (Lackner Deposition, March 23, 2004, Exhibit 4 at 1; R.R. at 195a). In 1985, Appellant received a bonus of $30,000, and in January 2001, a bonus of $17,553. A letter agreement dated December 19, 2000, authored by Glosser and addressed to and signed as "accepted" by Appellant, provides as follows:

> I have your request for payment of a bonus due for your performance in fiscal 1989 in the amount of $17,553.00, which

---

1. On appeal from this grant of summary judgment, we review the facts in the light most favorable to Appellant as taken from the pleadings, depositions, answers to interrogatories, admissions and any affidavits. *See Hadar v. AVCO Corp.*, 886 A.2d 225, 226, n. 1 (Pa.Super.2005) (citing *Porter v. Joy Realty, Inc.*, 872 A.2d 846, 849 (Pa.Super.2005)).

is in accordance with our agreement dated 9/1/83, a copy of which is attached. This bonus will be paid to you in January of 2001 and upon payment of this bonus you hereby agree that no further bonuses are due under this arrangement up through the end of our fiscal year, June 30, 2000.

(*Id.*, Exhibit 18; R.R. at 196a).

¶ 3 Appellant's position as Executive Vice President required him, among other things, to set up, manage and supervise an accounting system for the Corporation. Appellant met this responsibility by implementing an accounting system that he had developed and used with a previous employer. This system generated monthly reports and income statements for each of the Corporation's locations, and it produced balance sheets for the Corporation. It was also capable of setting up reports for additional companies, which was done from time to time. Further, for some divisions, the system provided information on the profitability of individual items produced. To implement this system, Appellant had access to accounts payable, accounts receivable, invoices, purchase orders, cash receipts, and vouchers for accounts payable for all of the Corporation's divisions. Also, Appellant had access to the same types of documents of Appellee, Glosser Manufacturing Company, Inc. ("the Manufacturing Company"). (*Id.* at 54–60, 138–145; R.R at 584a–590a, 669a–676a). Appellant considered himself an expert in financial statements and "forensic accounting," which he described as the knowledge of knowing when and why audits and accounts are incorrect. (*Id.* at 13–14; R.R at 543a–544a).

¶ 4 In 1990, one of the Corporation's divisions under Appellant's management began manufacturing commercial and industrial trash compactors. Between 1991 and 1997, Appellant filed three applications with the United States Patent and Trademark Office ("the Patent Office") for patents covering inventions involving trash compactors. In 1998, Appellant, Glosser, and another individual, filed an application for a patent involving another trash compacting device. The Patent Office issued patents to the named inventors, including Appellant, who in turn assigned the patents to the Corporation, the Manufacturing Company, or Glosser doing business as the Manufacturing Company.[2] All of the assignments explicitly provided that the patents were assigned "in consideration of One Dollar ($1.00) and other good and valuable consideration paid to me by [the] assignee, receipt whereof [the assignor] hereby acknowledge[s]." (*Id.* Exhibits 14–16; R.R. at 197a–199a). Appellant fully executed the assignments.[3]

¶ 5 In early July 2001, Appellant's employment with the Corporation was suspended, and on July 6, 2001, Appellant commenced the instant action against Appellees. Appellant's amended complaint, setting forth seven counts, asserts two broad categories of liability and injury: (1) that Glosser, the Corporation, and the Manufacturing Company, failed to tender promised consideration in exchange for Appellant's assignment of the patents or had otherwise failed to protect and satisfy alleged compensation rights owed to Appellant in connection with the patents; and (2) that Glosser, and the entities allegedly

---

2. Prior to its incorporation, the Manufacturing Company was a sole proprietorship owned by Glosser.

3. The Patent Office required that one of the inventions be divided into two patents. Thus,

there are only three assignments of patents in the record. The record is unclear as to the actual extent of Appellant's involvement with the creation of the patented inventions.

controlled by him,[4] conspired with their accountants[5] to shift assets and engage in improper accounting practices in an effort to artificially lower the after-tax earnings of the Corporation so as to deprive Appellant of bonuses promised under the terms of his employment with the Corporation.

¶ 6 With respect to his first broad area of contention, Appellant alleged that in 1991, Glosser orally promised Appellant that he would, *"in the future,"* confer upon Appellant an equity position in "various divisions" of the Corporation and Manufacturing Company. (Amended Complaint, filed January 4, 2002, at ¶ 19; R.R. at 10a; emphasis added). Although Appellant did not allege that this promise was made in exchange for his own promise to assign any patents he might one day secure to Glosser and/or the Corporation, he did allege as follows:

> [Appellant] pursued his invention and design of trash compaction apparatus, the patenting of those designs and inventions, and the ultimate assignments of his patents and proprietary rights to Glosser, the [Manufacturing] Company and/or the Corporation solely and completely in consideration of, and in good faith reliance upon, Glosser's promise, covenant and warrant to [Appellant] that [Appellant] would be compensated for those assignments in the future, from the revenues and/or profits to be realized from the manufacture, marketing, sale and servicing of patented [Appellant] devices by Glosser, the [Manufacturing] Company and/or the Corporation and their various affiliates.

(*Id.* at ¶ 39; R.R. at 14a).

¶ 7 Appellant did not allege, nor has he ever identified, any written agreement between himself and Glosser regarding consideration for assignment of the patents or a promise of future compensation from the manufacture, marketing, sale, or service of the patented creations. On the contrary, Appellant alleged that he made "numerous and increasingly emphatic" requests to Glosser to enter into a written agreement that would set forth his "participation" in the proceeds of a proposed future sale of the assets of the compactor division, including the patents (*id.* at ¶ 43; R.R. at 15a), but that Glosser "refused categorically to enter into a written agreement" or even an oral agreement concerning compensation to be paid to Appellant following a future sale of the compactor division. (*Id.* at ¶ 44; R.R. at 15a).

¶ 8 The amended complaint listed four counts against Glosser, the Corporation, and the Manufacturing Company with respect to Appellant's allegations of lost compensation related to the assignment of the patents. Count I sought *rescission* of the patent assignments based on lack of consideration or a failure to tender promised future consideration. Count II sought to *enjoin* Glosser, the Corporation, and the Manufacturing Company from selling, assigning, licensing or otherwise transferring the patents or from taking any unspecified action that might damage Appellant's alleged interest in the patents. Count III requested the trial court to *specifically enforce* a non-existent compensation agreement between Glosser and Appellant that Appellant hoped to create, either through "mutually acceptable" terms or, failing that, terms "determined and directed by the Court, to assure equitable and just

---

4. The Corporation, the Manufacturing Company, and Appellees, the David A. Glosser Foundation ("Foundation"), and Lesdan Realty, Inc. ("Lesdan") (together with Glosser, collectively "the Glosser Appellees").

5. Appellees James Saly, and Barnes Saly & Company, LLP (collectively "the Accountant Appellees").

compensation" for Appellant as a result of his assignment of the patents. (*Id.* at ¶ 64; R.R. at 21a). Count IV, captioned "Quasi–Contract," sought monetary damages for alleged *unjust enrichment* of Glosser "and the other Defendants" arising from the assignment of the patents. (*Id.* at ¶¶ 66–67; R.R. at 22a).

¶ 9 Appellant set forth three additional counts pertaining to his second broad area of contention, all based on his allegation that Glosser, with Accountant Appellees, "controlled and manipulated the accrual, allocation and disbursement of revenue" of the Corporation, the Manufacturing Company, and other Glosser Appellees "in a manner inuring to the … personal benefit of Glosser," and with the intent of preventing the compactor and other divisions of the Corporation from showing actual profits. (*Id.* at ¶ 46; R.R. at 16a). Count V sought an *accounting* of the Corporation's financial circumstances over an unspecified number of years. Count VI sought monetary damages as a result of alleged injury suffered from an alleged *civil conspiracy* between Accountant Appellees and Glosser Appellees to willfully misapply or ignore auditing and accounting standards and procedures. Count VII sought monetary damages as a result of alleged injury arising from the *negligence* of Glosser and Accountant Appellees in failing to exercise reasonable care when applying accounting, auditing, and financial reporting standards.

¶ 10 Appellees denied the material allegations of Appellant's amended complaint. Specifically, they denied that Glosser had promised Appellant additional compensation at a future date. Glosser admitted only that he had agreed to consider additional unspecified forms of compensation in the future for Appellant if the economic conditions of the Corporation warranted such a step. The Glosser Appellees alleged that such economic conditions did not occur, and that a meeting of the minds between the parties was never reached regarding additional unspecified forms of future compensation. (Answer and New Matter to Amended Complaint and Counterclaim of Appellees Glosser, the Corporation, the Manufacturing Company, the Foundation, and Lesdan, filed November 15, 2002, at ¶¶ 19, 21, 31, 39; R.R. at 68a–69a, 71a).

¶ 11 Following the close of the pleadings, the parties engaged in extensive discovery, including the taking of depositions and the disclosure of a vast number of documents. Relevant to our review of the trial court's opinion and order are several statements and admissions made by Appellant in his deposition.

¶ 12 Appellant testified that at the time he was hired by Glosser in 1983, Glosser told him that he was looking for someone to take over the Corporation, that Glosser would arrange for Appellant to acquire equity ownership, and that Appellant would eventually own the Corporation. Appellant also alleged that these types of representations continued over the course of the next seventeen years. (Lackner Deposition at 28; R.R. at 558a). Appellant admitted that there was no documentary evidence of the initial conversation or any subsequent ones. (*Id.* at 33–34; R.R. at 563a–564a).

¶ 13 With regard to the patents, Appellant testified that prior to his assigning the first patent to the Corporation in 1991, Glosser had told him that he would have to assign the patent to Glosser, but that he should not "worry" as he would "eventually … own this entire company." (*Id.* at 155–56; R.R. at 686a–687a). Appellant conceded that regarding the assignment not only of the first patent but of all of the patents, there were no more "terms" other than this statement allegedly made in 1991

by Glosser to Appellant. (*Id.* at 156–62; R.R. at 182a–188a, 687a–693a).

¶ 14 In fact, Appellant admitted that he and Glosser *"were never able to set terms [regarding the patents] because he never came up with any kind of firm offer ... [and] I filed [the instant] lawsuit based on that."* (*Id.* at 164; R.R. at 190a, 695a; emphasis added).[6] At most, Appellant testified that Glosser made him another undocumented promise in late 2000 or early 2001 that Glosser would share with Appellant the royalties from the patents in the event of their sale. (*Id.* at 158, 164; R.R. at 184a, 190a, 689a, 695a). However, Appellant also admitted that as of the date of his deposition, he had no evidence of any then-current intention by the Glosser Appellees to sell, license, or "do anything" else with the patents at issue, and that he was informed that there was no present intention to sell, license, or transfer the patents at that time. (*Id.* at 165–66; R.R. at 191a–192a, 696a–697a).

¶ 15 The Glosser Appellees and the Accountant Appellees filed separate motions for summary judgment. Judge Folino, in his thorough and well-written opinion, granted the summary judgment motions and dismissed Appellant's amended complaint in its entirety. Judge Folino concluded that (1) there was no existing contract between Appellant and any of the Glosser Appellees regarding additional compensation to be made to Appellant for assignment of the patents; (2) the alleged statement by Glosser that one day Appellant would "own the company" was too indefinite to permit the court to fashion a contractual remedy; (3) the court was pro-

hibited under the law from "writing" a contract for the parties when they themselves had not agreed to contractual terms; (4) Appellant's signed agreement of December 19, 2000, that he was owed no further bonuses through June 30, 2000, was enforceable absent fraud or mutual mistake; (5) Appellant never pled mutual mistake or presented evidence that Appellees had fraudulently under-reported profits of the Corporation; (6) Appellant, in his capacity as supervisor of the Corporation's accounting, never alleged that he was *unaware* of the alleged improper accounting practices when they occurred; and (7) the evidence Appellant presented regarding alleged improper accounting practices appeared to make the Corporation show a *greater* rather than lesser profit, thereby undercutting Appellant's claims of harm.

¶ 16 Appellant filed a timely appeal from the order granting summary judgment, and he presents the following issue for our review:

DID THE COURT BELOW ERR AS A MATTER OF LAW AND AS A MATTER OF FACT, AND ABUSE ITS DISCRETION, BY IGNORING GENUINE ISSUES OF MATERIAL FACT, APPEARING OF RECORD BEFORE THE COURT BELOW, AND PREVENTING [SIC] THE ENTRY OF SUMMARY JUDGMENT AS A MATTER OF LAW ON THE ISSUES OF FAILURE OF CONSIDERATION; FRAUDULENT CONCEALMENT OF BREACH OF PROMISE BY THE PATENT ASSIGNEE; AND APPELLANT'S RIGHT TO SPECIFIC PER-

---

**6.** In pleadings, Appellant also admitted that he and Glosser "never reached agreement on specific monetary compensation with the patent assignments," and that "Glosser refuse[d] to enter into a written agreement with [Appellant] relating to [Appellant's] consideration to be received from the proceeds of sale of the

Compactor Division" of the Corporation. (Plaintiff's Response to Motion for Summary Judgment by Defendants Daniel S. Glosser, Glosser Manufacturing Company, Inc., M. Glosser & Sons, Inc., the David A. Glosser Foundation, Lesdan Realty, Inc., dated June 7, 2004, at ¶¶ 11, 21; R.R. at 230a, 234a).

FORMANCE TO CORRECT UNJUST ENRICHMENT OF APPELLEES; AND THE FRAUDULENT CONSPIRACY BY ALL [APPELLEES] WHICH DEPRIVED APPELLANT OF PROMISED COMPENSATION?

(Appellant's Brief at 4).

¶ 17 When reviewing the propriety of an order granting summary judgment, this Court must determine whether the record (1) establishes that the material facts are undisputed, or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. *Hadar, supra* at 227; Pa. R.C.P. 1035.2 *Note.* Summary judgment should be entered only in those cases in which it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Bullman v. Giuntoli,* 761 A.2d 566, 569 (Pa.Super.2000) (quotation omitted); *Dansak v. Cameron Coca–Cola Bottling Co., Inc.,* 703 A.2d 489, 492 (Pa.Super.1997) (quotation omitted). "[W]here there is evidence that would allow a jury to find in the non-moving party's favor, summary judgment should be denied and the case should proceed to trial." *Porter,* 872 A.2d at 848–49. Our scope of review is plenary, and we apply the same standard of review as the trial court. *Grandelli v. Methodist Hospital,* 777 A.2d 1138, 1144 (Pa.Super.2001) (quotation omitted).

¶ 18 Preliminarily, we must review Appellees' assertion that Appellant has waived all arguments regarding the trial court's dismissal of each of his counts in the amended complaint except for that asserting an action for specific performance. Appellees point out that Appellant initially raised eight issues on appeal, in which he argued that the trial court erred generally by granting summary judgment, and that it erred specifically by granting it on each of the seven counts of Appellant's amended complaint. (Appellant's Superior Court of Pennsylvania Civil Docketing Statement, dated October 7, 2004, at 2–3). Appellees further note that the argument section of Appellant's brief before this Court sets forth only two arguments:

[1] THE COURT BELOW ERRED IN ITS DETERMINATION THAT THERE WAS NO SPECIFIC AGREEMENT OR PROMISE TO PAY FUTURE COMPENSATION FOR THE PATENT ASSIGNMENTS.

[2] THE JUDICIAL PRECEDENT RELIED UPON BY THE COURT BELOW ARE ALL INAPPOSITE.

(Appellant's Brief at 18 and 22). Appellees contend that the issues identified in the argument section relate solely to the count for specific enforcement. Therefore, Appellees argue that Appellant has waived all issues on appeal except for that of whether the trial court erred by not specifically enforcing a contract alleged to exist between Appellant and Glosser or the Glosser Appellees regarding compensation for the assignment of the patents.

¶ 19 An appellate court will ordinarily not consider any issue if it has not been set forth in or suggested by an appellate brief's Statement of Questions Involved. Pa.R.A.P. 2116(a). Further, the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued." Pa. R.A.P. 2119(a). Appellate arguments which fail to adhere to these rules may be considered waived, *Lundy v. Manchel,* 865 A.2d 850, 855 (Pa.Super.2004), and arguments which are not appropriately developed are waived. *Jones v. Jones,* 878 A.2d 86, 90–91 (Pa.Super.2005) (citing *Korn v. Epstein,* 727 A.2d 1130, 1135 (Pa.Super.1999)). Arguments not appropriately developed include those where the party

has failed to cite any authority in support of a contention. *Id.* (citations omitted).

¶ 20 Although Appellant raised eight issues on appeal in his Civil Docketing Statement, there is only one question presented in his appellate brief. This question rather broadly posits that the trial court erred by "ignoring" material factual disputes pertaining to the issues of (1) failure of consideration; (2) "fraudulent concealment of breach of promise;" (3) specific performance; and (4) "fraudulent" conspiracy. Notable by its total absence is any discussion of the counts raised in Appellant's amended complaint regarding injunction, accounting, and negligence. Moreover, the argument section of Appellant's brief fails to raise or even touch upon any issue involving his counts requesting an injunction, an accounting, and monetary damages arising from negligent accounting procedures. Accordingly, we agree with Appellees to the extent that Appellant has waived any argument regarding the trial court's dismissal of Counts II, V, and VII of the amended complaint.

¶ 21 The argument section of Appellant's brief, however, while neither in complete conformance with Pa.R.A.P. 2119(a) nor impressively developed, does touch upon the legal issues of specific performance, unjust enrichment, rescission, and civil conspiracy. More importantly, however, Appellant's arguments are based largely on his contention that the trial court ignored or misapplied facts of record in entering summary judgment. Therefore, to give Appellant every benefit of the doubt, we will review Appellant's arguments other than those described above which have been waived.

¶ 22 Appellant bundles his specific performance, unjust enrichment, and rescission arguments together. He contends that the trial court ignored "evidence indi-cating an existence of an agreement calling for assignment of the patents, commercial exploitation of those patents by Glosser and repeated promises by Glosser, before and after the assignment, to pay additional compensation when the Compactor Division made a profit." (Appellant's Brief at 18). The "evidence" Appellant references are the items of testimony in Appellant's deposition, set forth above. Essentially, Appellant argues that either there was an implied agreement between himself and Glosser to assign the patents, or that the assignments were made without tender of consideration. After a thorough review of the record, we disagree with Appellant's assessment that the trial court ignored pertinent evidence in the record. We also do not agree that the evidence is sufficient to go before a jury on the question of whether there was an implied contract to assign the patents or pay Appellant additional compensation for the assignment.

¶ 23 To maintain a cause of action in breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *Gorski v. Smith,* 812 A.2d 683, 692 (Pa.Super.2002) (citation omitted). For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain. *Peck v. Delaware County Board of Prison Inspectors,* 572 Pa. 249, 260, 814 A.2d 185, 191 (2002) (citing *Lombardo v. Gasparini Excavating Co.,* 385 Pa. 388, 393, 123 A.2d 663, 666 (1956)).

¶ 24 An enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity. *Biddle v. Johnsonbaugh,* 444 Pa.Super. 450, 664 A.2d 159,

163 (1995) (citation omitted). Where, however, there is no agreement or even a discussion as to *any* of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the "agreement" is too indefinite for a party to *reasonably* believe that it could be enforceable in an action at law. *Lombardo, supra.* Further, an *offer* to contract must be intentional and sufficiently definite in its terms, and no offer will be found to exist where its essential terms are unclear. *Beaver Valley Alloy Foundry, Co. v. Therma–Fab, Inc.,* 814 A.2d 217, 222 (Pa.Super.2002) (citations omitted). Moreover, a promise to perform or forbear from performing must be supported by consideration. If the promise is entirely optional with the promisor, it is illusory, lacks consideration, and is unenforceable. *Geisinger Clinic v. Di Cuccio,* 414 Pa.Super. 85, 606 A.2d 509, 512 (1992) (citations omitted).

 ¶ 25 Specific performance is an equitable remedy that permits the court "to compel performance of a contract when there exists in the contract an agreement between the parties *as to the nature of the performance*." *Id.* at 521 (citations omitted; emphasis added). "Specific performance should only be granted where the facts clearly establish the plaintiff's right thereto, where no adequate remedy at law exists, and where justice requires it." *Clark v. Pennsylvania State Police,* 496 Pa. 310, 313, 436 A.2d 1383, 1385 (1981) (citations omitted). Further, a plaintiff will not be successful in an action for specific performance if the evidence is so uncertain, inadequate, equivocal, ambiguous, or contradictory as to render findings or

legitimate inferences therefrom mere conjecture. *Barnes v. McKellar,* 434 Pa.Super. 597, 644 A.2d 770, 776 (1994).[7] It also is inarguable that when performance under a contract is uncertain, the court will not write the contract for the parties. *Turner v. Hostetler,* 359 Pa.Super. 167, 518 A.2d 833, 836 (1986).

 ¶ 26 We also note that when a party alleges verbal agreements which are at odds with the language of a written contract, the parol evidence rules applies. As our Supreme Court stated:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the *only,* evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 497, 854 A.2d 425, 436 (2004) (quoting *Gianni v. Russell & Co.,* 281 Pa. 320, 126 A. 791, 792 (1924)) (emphasis added).

 ¶ 27 In the case *sub judice,* the trial court concluded, after a thorough review of the evidence, that no contract existed between Appellant and Glosser regarding additional compensation for the patent assignments, a sale of the Corporation to Appellant, or royalty rights from a sale of the patents. We are compelled to agree with the trial court. Quite simply,

---

7. Rescission is yet another equitable remedy, the purpose of which is to return the parties to their original positions concerning the subject matter of the contract. *Sullivan v. Allegheny Ford Truck Sales, Inc.,* 283 Pa.Super. 351, 423 A.2d 1292, 1295 (1980) (citation omitted). Of course, before this remedy may be considered, a valid and existing contract must exist.

the evidence of record is woefully inadequate to establish the contract or contracts that Appellant believes existed. Appellant himself admitted to this fact when he testified that Glosser had made only "vague promises" to him over the course of seventeen years,[8] and that he and Glosser "were never able to set terms" regarding any kind of agreement,[9] and when he pled that he and Glosser "never reached agreement on specific monetary compensation with the patent assignments," and that "Glosser refuse[d] to enter into a written agreement with [Appellant] relating to [Appellant's] consideration to be received from the proceeds of sale of the Compactor Division" of the Corporation.[10] Appellant's concession that there was no valid contract is highlighted by the fact that Appellant's Count III asks the court to fashion the terms of an "equitable contract" should he and Glosser have failed to come to contractual terms during the course of this litigation. (Amended Complaint, at ¶ 64; R.R. at 21a). This Court is prohibited, however, from writing a contract for the parties when they themselves have failed to agree to essential terms. *See Turner, supra* at 836.

¶ 28 What the evidence establishes is that Glosser did advance the idea that at some future point, Appellant would purchase the Corporation for an undefined price, at an unspecified time, and on undefined terms. This is not a contract. At most, it is a promise entirely optional with the promisor, and is thus unenforceable. *See Geisinger Clinic, supra.* Moreover, the record evidence discloses no discussion of consideration, and a notable failure to link the potential assignment of any patents to a future purchase of the Corporation. Glosser's later promise of royalties upon a possible sale of the patents was likewise indefinite in terms of amount, time, place, or consideration. In short, the record yields fatally insufficient evidence to establish the elements of a contract regarding the assignment of the patents. *See id.; Lombardo, supra; Biddle, supra.*

¶ 29 At the same time, the documentary evidence in the record reflects that at the time of hire, Appellant was given a specific salary and an agreement on bonuses.[11] Nothing was written about a possible future purchase of the Corporation or compensation for possible future patent assignments. The patents themselves were assigned pursuant to duly-executed agreements in which Appellant *acknowledged* that he had already received "good and valuable consideration" (Lackner Deposition, Exhibits 14–16; R.R. at 197a–199a), and Appellant has not alleged fraud or mistake in the execution of these assignments. On the contrary, he testified that he freely assigned the patents without coercion, although he testified that he did have Glosser's earlier promises in mind. (*Id.* at 155, 664 A.2d 159; R.R at 686a). Therefore, because there were explicitly-stated written terms pertaining to the assignments, parol evidence of preliminary discussions[12] cannot work to alter the written terms. *Yocca, supra.*

¶ 30 Moreover, with respect to the issue of consideration for the assignment

---

8. (Lackner Deposition at 150; R.R. at 681a).

9. (*Id.* at 164; R.R. at 695a).

10. (Plaintiff's Response to Motion for Summary Judgment, filed by the Glosser Appellees, at ¶¶ 11, 21; R.R. at 230a, 234a).

11. (Lackner Deposition, Exhibit 4 at 1; R.R. at 195a).

12. There is certainly no evidence in the record of a preliminary verbal *agreement* between Appellant and Glosser as to any additional terms.

of the patents, we note that Appellant was no mere employee of the Corporation who happened to devise an invention. He was the Executive Vice President of the Corporation. As an officer, he owed a duty to act in "good faith" and in a manner that he reasonably believed would be "in the best interests" of the Corporation and the related entities he managed, including the Compactor Division. *See* 15 Pa.C.S.A. § 512(c).[13] Therefore, the record does not support Appellant's contention that he was owed any further consideration for the assignment of the patents.[14]

¶ 31 Based on the foregoing analysis and our complete review of the record, we conclude that the trial court did not err when it granted summary judgment and dismissed Appellant's counts for specific performance and rescission. The record is completely devoid of evidence of a valid and clearly-articulated contract term regarding additional compensation or royalties arising from the patent assignments which a court could enforce or rescind. The evidence pertaining to Appellant's claim of a contract for additional compensation or royalties for the patent assignments is so uncertain, inadequate, equivocal, ambiguous, and contradictory as to render findings or legitimate inferences therefrom mere conjecture. *See Clark, supra; Barnes, supra.* Thus, Appellant lacks a contractual remedy.

¶ 32 Appellant alternatively argues that the record establishes the existence of a quasi-contract under which Glosser Appellees were unjustly enriched, relying for support on *Schott v. Westinghouse Electric Corporation,* 436 Pa. 279, 259 A.2d 443 (1969). In *Schott,* the employer instituted a program promising its employees cash awards up to $15,000 in exchange for accepted suggestions relating to ideas for increased production or reduced costs. The employee-plaintiff twice submitted a suggestion, which was twice found unacceptable by the employer. The employee later noticed that the employer had instituted his suggestion or a similar suggestion, and filed suit seeking damages on the grounds of breach of contract and unjust enrichment. Preliminary objections to the complaint were granted. Our Supreme Court reversed as to the cause of action for unjust enrichment, holding that the pleadings did set forth a cause of action in quasi-contract where they alleged that the employer used the same basic idea as that proposed by the plaintiff, resulting in savings to the employer, and failed to reward the plaintiff for his idea, as promised. *Id.* at 291–292, 259 A.2d at 449. Of course, at the stage of the proceedings in question, no evidentiary record had been established and the Court considered only whether the complaint and its attachments set forth a cause of action.[15]

---

**13.** A person owing such fiduciary duty fails to act in a manner reasonably believed to be in the best interests of the corporation when that person reserves ownership of his or her inventions rather than assigning them to the corporation. *Gruenwald v. Advanced Computer Applications, Inc.,* 730 A.2d 1004, 1013 (Pa.Super.1999). *Accord University Patents, Inc. v. Kligman,* 762 F.Supp. 1212, 1221 (E.D.Pa.1991). *See also Lacy v. Rotating Productions Systems, Inc.,* 961 P.2d 1144 (Co. App.1998). In *Lacy,* the Colorado Court of Appeals reversed an order granting a rescission of an assigned patent on the grounds that the assignor, as a corporate officer, owed a fiduciary duty to his employer to assign the rights to his invention, thus rendering his prior assignment valid, although the assignment was supported by allegedly insufficient consideration.

**14.** Nothing in the record indicates that the patented inventions were developed on private time or with private resources. Further, it is undisputed that the devices pertain wholly to the business of the Compactor Division.

**15.** Instantly, by contrast, we review this summary judgment matter based on a very well-developed evidentiary record.

¶33 Quasi-contracts are to be distinguished from express contracts or contracts implied-in-fact. *Id.* at 290, 259 A.2d at 449.

A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred. In other words, the defendant makes restitution to the plaintiff in *quantum meruit.*

*AmeriPro Search, Inc. v. Fleming Steel Company,* 787 A.2d 988, 991 (Pa.Super.2001) (citations omitted). By its nature, the doctrine of quasicontract, or unjust enrichment, is inapplicable where a written or express contract exists. *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa.Super.1999).

¶34 Appellant asserts in his brief that the record reflects he "always expected and frequently requested compensation for the assignment" of the patents. (Appellant's Brief at 22). However, on the contrary, Appellant never testified or submitted any evidence that he requested compensation for the patents prior to or contemporaneous with their assignment. If Appellant expected direct or future compensation at the time he made the assignment, he never testified to any requests for same to Glosser, nor did he testify to taking any steps to secure an agreement with Glosser or the Corporation for additional compensation. Further, as previously discussed, Appellant, as an officer of the Corporation, had a duty to assign his work-related inventions to the Corporation. Therefore, the record does not support a cause of action for *unjust* enrichment.

¶35 Additional support for our conclusion that Appellant's quasi-contract claim was properly dismissed on summary judgment comes from the fact that the record contains fully-executed written agreements wherein Appellant assigned the patents "in consideration of One Dollar ($1.00) and other good and valuable consideration" acknowledged as received by Appellant. (Lackner Deposition, Exhibits 14–16; R.R. at 197a–199a). As previously noted, Appellant testified that he freely assigned the patents without coercion. (*Id.* at 155; R.R at 686a). Appellant's unjust enrichment action cannot proceed in the face of fully-executed, express contracts. *Mitchell, supra.*

¶36 Finally, Appellant argues that the trial court ignored evidence supporting his action for a civil conspiracy allegedly existing between the Glosser Appellees and the Accountant Appellees. We disagree.

¶37 In order for a claim of civil conspiracy to proceed, a plaintiff must "allege the existence of all elements necessary to such a cause of action." *Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 612 A.2d 500, 508 (1992) (citation omitted).

The Pennsylvania Supreme Court set forth the elements of civil conspiracy in *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 211, 412 A.2d 466, 472 (1979): "It must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Proof of malice, *i.e.,* an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification. [*Id.*]. Furthermore, a conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design ... and actual legal damage results."

*Grose v. Procter & Gamble Paper Products,* 866 A.2d 437, 440–41 (Pa.Super.2005) (citation omitted). Additionally, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Id.* at 441 (citation omitted).

██ ¶ 38 Here, Appellant's action for civil conspiracy relies principally upon a report issued at his request by Ralph Minto, Jr. & Associates, a law firm, dated February 13, 2004 ("Minto Report"). The Minto Report does conclude that Accountant Appellees failed to exercise due diligence in the preparation of the tax returns pertaining to sales made by the Equipment and Scrap Divisions of the Corporation to the Manufacturing Company. (Minto Report at 16; R.R. at 253a). Essentially, the Minto Report found that the sales involved products with overstated values. (*Id.* at 7, 10; R.R. at 244a, 247a). The Minto Report concluded that the allegedly overvalued products were transferred from the Corporation to the Manufacturing Company in order to afford Glosser enhanced deductions on his federal income tax return. (*Id.* at 12–13; R.R. at 249a–250a).[16]

¶ 39 Significantly, the Minto Report did not conclude, or even suggest, that the transactions reviewed had been done with the intention of insuring that Appellant would not receive a bonus, or would receive a reduced bonus, on the profits of the Corporation. On the contrary, as the trial court determined, the overvaluation of material sold by the Corporation would only result in the Corporation reporting a *higher* profit on the sales, which would have inured to Appellant's financial benefit. Therefore, the record does not reveal evidence of Appellees' malice or intent to injure Appellant. Absent the essential element of malice, it was proper for the trial court to grant summary judgment on the civil conspiracy count.

¶ 40 Further, Appellant signed a letter agreement dated December 19, 2000, acknowledging that he had earned a bonus of $17,553, and providing that it would be paid in January 2001, which amount would cover all bonuses due under his employment agreement to June 30, 2000. (Lackner Deposition, Exhibit 18; R.R. at 196a). Absent fraud or mutual mistake, this agreement is binding. *See Roth v. Old Guard Insurance Co.,* 850 A.2d 651, 653 (Pa.Super.2004), *appeal denied,* 583 Pa. 674, 876 A.2d 396 (2005) (citation omitted) (holding that a release is enforceable according to its terms absent fraud or mutual mistake).

¶ 41 Appellant has not alleged fraud in the inducement of this agreement, or mutual mistake. Appellant's amended complaint sets forth absolutely no allegations of fraud with respect to any act or omission by Appellees. Although Appellant now contends in his brief that the alleged accounting irregularities committed by the

**16.** The Manufacturing Company is a subchapter S corporation owned by Glosser, while the Corporation is a subchapter C corporation. (*Id.*).

Appellees were fraudulently devised,[17] there is no evidence that Appellant was fraudulently deprived of a bonus under his original employment agreement. Moreover, Appellant's testimony is exhaustive as it pertains to his expertise in accounting and auditing and his access to the books and records of the Corporation and related companies. (*Id.* at 13–14, 54–60, 138–145; R.R at 543a–544a, 584a–590a, 669a–676a). Accordingly, it was proper for the trial court to note and rely on, in granting summary judgment, Appellant's failure to plead ignorance of the pertinent transactions occurring between the Corporation and the Manufacturing Company that he alleges were part of a civil conspiracy against him.

¶ 42 For all of the reasons set forth above, we conclude that the trial court properly granted summary judgment to Appellees and dismissed Appellant's amended complaint in its entirety. Accordingly, we affirm.

¶ 43 Order affirmed.

---

**17.** (*See, e.g.,* Appellant's Brief at 14–15, 22).