J-A29010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S. I. R. S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 821 WDA 2024 |

Appeal from the Order Entered June 10, 2024
In the Court of Common Pleas of Clarion County Civil Division at No(s):
No. 59 OC 2024

| | | |
|---|---|---|
| IN THE INTEREST OF: N. S.T. B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 822 WDA 2024 |

Appeal from the Order Entered June 10, 2024
In the Court of Common Pleas of Clarion County Civil Division at No(s):
No. 58 OC 2024

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED: FEBRUARY 27, 2025**

D.S. ("Mother") appeals from the June 10, 2024 orders that involuntarily terminated her parental rights to her biological daughters, S.I.R.S., born in

January of 2020, and N.S.T.B., born in September of 2021 (collectively "the Children").[1, 2] After careful review, we affirm.

The certified record reveals the following relevant facts and procedural history. The Clarion County Office of Children and Youth Services ("CYS" or "the Agency") first became involved with this family in May of 2021, after Mother was evicted from her apartment where she resided with S.I.R.S. *See* N.T., 3/26/2024, at 7. From May of 2021, to March of 2022, Mother lived at twelve different locations with the Children. *See id.* Following this extended period of housing instability, the court adjudicated the Children dependent on March 10, 2022. *See id.* at 6-7. Thereafter, the Children remained in Mother's care under court supervision until June 20, 2022, when they were removed due to Mother's continuing lack of consistent housing. *See id.*

The court established the Children's permanency goals as reunification. Mother's goals for reunification were, *inter alia*, to obtain and maintain stable housing and employment. *See* N.T., 3/26/2024, at 7-8, 13-14. Mother's housing instability persisted throughout the Children's dependency proceedings due to her inability to maintain employment, as well as her

---

[1] The parental rights of T.L., the father of S.I.R.S., were involuntarily terminated by separate order on June 10, 2024. T.L. appealed the termination order, which we address by separate memorandum at 820 WDA 2024.

[2] The parental rights of T.B., the father of N.S.T.B., were involuntarily terminated by separate order on June 10, 2024. T.B. did not appeal nor did he participate in Mother's instant appeal.

repeated incarcerations for illegal drug related probation violations and her subsequent in-patient drug rehabilitations.

Specifically, from March of 2022, through April of 2023, Mother lived in three different residences in various Pennsylvania counties until her probation officer ordered her to return to Clarion County.[3]  *See id.* at 9-10.  Upon her return, however, Mother was unable to obtain housing due to her extensive history of evictions and unspecified felony convictions.  *See id.* at 10-11, 42. From April 21, 2023, to September 30, 2023, Mother was incarcerated on three separate occasions due to probation violations for testing positive for methamphetamines and two unsuccessful discharges from court-ordered drug rehabilitation facilities.  *See id.* at 11-12; N.T., 5/6/2024, at 13-14.  On September 30, 2023, Mother was imprisoned, again, for a fourth time due to another unsuccessful drug rehabilitation discharge.  *See id.* at 12-13; N.T., 5/6/2024, at 14.  She remained incarcerated until approximately April of 2024. *See id.*; N.T., 5/6/2024, at 6.  Upon her release, Mother completed another rehabilitation program before residing at her current treatment facility, where she remained at the time of the termination proceedings.  *See* N.T., 5/6/2024, at 6.

In relation to her goal of maintaining stable employment, Mother was minimally employed throughout these proceedings and held several

_____

[3] The charges from which Mother's probation originated are not clear in the certified record.

- 3 -

temporary positions from March of 2022 until December of 2023. *See* N.T., 3/26/2024, at 14-15; N.T. 5/6/2024, at 11, 15. The record reveals no additional employment after December of 2023. *See id.*

Upon the Children's removal in June of 2022, the Agency discovered that they were not up to date with their medical and dental care. *See* N.T., 3/26/2024, at 30-32. The Children also had speech delays, which required enrollment in early intervention services. *See id.* at 32. At the time of the subject hearing, S.I.R.S. was still receiving services, but N.S.T.B. had met her developmental milestones and no longer participated in services. *See id.* The Children were placed with their current pre-adoptive foster parents in January of 2023. *See id.* at 29, 36.

When the Children were initially removed from Mother's care, she was offered weekly supervised visits at the Agency for two hours. *See* N.T., 3/26/2024, at 19-20. In January of 2023, supervised visits began to occur in Mother's home. *See id.* at 20. Visits were scheduled to progress to "monitored" visitation,[4] but they regressed to supervised interactions at the Agency in February of 2023, after Mother became homeless. *See id.* Mother's attendance at visitation after February of 2023 was largely inconsistent due to her repeated incarcerations and unsuccessful stints in rehabilitation

---

[4] Monitored visitation is not defined in the certified record.

facilities. *See id.* at 20-21. The last in-person visit between Mother and the Children occurred on June 1, 2023. *See id.* at 21.

By order dated June 14, 2023, the orphans' court changed the Children's permanency goals from reunification to adoption. Mother timely appealed the goal change orders, but this Court affirmed the orders on February 9, 2024. *See In the Interest of S.S.*, 315 A.3d 71 (Pa. Super. 2024) (non-precedential decision) (unpublished memorandum consolidated with *In the Interest of N.B.*, 315 A.3d 71 (Pa. Super. 2024)).

On March 8, 2024, CYS filed petitions to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The involuntary termination proceedings took place on March 26, 2024, May 6, 2024, and June 6, 2024.[5] The Children, then ages four and two, respectively, had been removed from Mother's care for approximately twenty-one months at the commencement of the hearings. On March 26,

---

[5] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020). In this case, the orphans' court appointed a guardian *ad litem* ("GAL") and separate legal counsel for the Children. *See* Order, S.I.R.S., 3/12/2024; Order, N.S.T.B., 3/12/2024. As such, the court complied with the requirements of 23 Pa.C.S.A. § 2313(a).

2024, CYS presented the testimony of its caseworker, Dylan Donine. On May 6, 2024, Mother testified on her own behalf.[6]

By orders dated June 6, 2024, and entered on June 10, 2024, the orphans' court involuntarily terminated Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Mother timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed separate Rule 1925(a) opinions on July 24, 2024.

Mother presents the following issues on appeal for our review:

1. Whether the [orphans' court] erred or committed an abuse of discretion in terminating [Mother]'s parental rights under 23 Pa.C.S.A. § 2511(a)(1)?

2. Whether the [orphans' court] erred or committed an abuse of discretion in terminating [Mother]'s parental rights under 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the [orphans' court] erred or committed an abuse of discretion in terminating [Mother]'s parental rights under 23 Pa.C.S.A. § 2511(a)(5)?

4. Whether the [orphans' court] erred or committed an abuse of discretion in terminating [Mother]'s parental rights under 23 Pa.C.S.A. § 2511(a)(8)?

5. Whether the [orphans' court] erred or committed an abuse of discretion in terminating [Mother]'s parental rights under 23 Pa.C.S.A. § 2511(b)?

---

[6] The final date of the hearing consisted of the testimony of T.L., closing arguments, and the court's decision. **See generally** N.T., 6/6/2024.

Mother's Brief at 5.[7]

> Our standard of review in this context is well-established:
>
> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-830 (Pa. Super. 2022) (cleaned up).

---

[7] We note with displeasure that neither the Children's GAL nor their legal counsel participated in the instant appeal. Both advocated for termination of Mother's parental rights at the conclusion of the termination hearing. *See* N.T., 6/6/2024, at 47-48.

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *See id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of the subsections of Section 2511(a) by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b).

This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). For the following reasons, we conclude that the orphans' court correctly held that the Agency met its burden of proof pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b), which provide as follows:[8]

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .

---

[8] By analyzing only Section 2511(a)(8), we make no conclusions as to the validity of the orphans' court's findings pursuant to Sections 2511(a)(1), (2), and (5). *See B.L.W.*, 843 A.2d at 384. Based on this disposition, we need not review Mother's arguments as to Sections 2511(a)(1), (2), and (5).

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

In order to satisfy Section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least 12 months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018). Section 2511(a)(8) does not necessitate an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). Rather, our inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is **imminent** at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009) (emphasis

added). Relevant to the third prong of Section 2511(a)(8), this Court has explained that,

> while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as prescribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

If the orphans' court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. A Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has reiterated, "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). The *K.T.* Court described the "severance of a necessary and beneficial relationship [as] the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm." *Id.* at 1109-1110, *citing In re E.M.*, 620 A.2d 481, 484 (Pa. 1993) (subsequent citations omitted).

Bond, permanency, stability, and all other intangibles are "all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. It is within the province of the orphans' court to "consider the totality

of the circumstances when performing a needs and welfare analysis." ***Id.*** We will not disturb such an assessment if the orphans' court's factual findings are supported by the record. ***See id.***

Instantly, Mother argues that the orphans' court abused its discretion in terminating her parental rights pursuant to Section 2511(a)(8). ***See*** Mother's Brief at 14-15. Mother concedes that the conditions that led to the Children's removal still exist in the argument section of her brief. ***See id.*** at 14 ("[I]t is true that Mother does not yet have independent, stable housing for herself and the [C]hildren[.]"). Mother's arguments are solely concentrated on the fact that she contends that she can remedy the conditions within "a reasonable timeframe" because the Children could reside with her at her current facility, and she expects to successfully transition to independent housing in October of 2024. ***See id.*** at 14-15. We are not persuaded by Mother's arguments.

With respect to Section 2511(a)(8), the orphans' court found that the conditions that led to the Children's removal from Mother in June of 2022 "continue[d] to exist and termination of parental rights would best serve the needs and welfare of the [Children]." Orphans' Court Opinion, S.I.R.S., 7/24/2024, at 17.[9] Specifically, the court found that the Children were removed from Mother's care due to her housing instability, that Mother has

_____

[9] As previously mentioned, the orphans' court wrote separate opinions for Children as they have different fathers. As the reasoning and findings as to Mother are identical in both opinions, we only cite to the opinion regarding S.I.R.S. for continuity.

- 11 -

not had stable housing since March of 2022, and that Mother has had a lengthy history of incarcerations and court-ordered rehabilitations due to illegal substance use. *See id.* at ¶¶ 5, 17-22, 35-37.

The orphans' court's findings are supported by the record evidence. Ms. Donine confirmed that the primary reason that the Children were removed was Mother's housing instability, which had existed for over twelve months before removal. *See* N.T., 3/26/2024, at 6-7. Ms. Donine testified to Mother's continued history of unstable housing and employment over the course of the subsequent two years that the Children were in custody of the Agency. *See id.* at 7-15. Due to Mother's repeated incarcerations and failed rehabilitation attempts, it is clear that her continued illegal drug use impacted her ability to obtain and maintain consistent housing and employment during the Children's dependency proceedings. *See id.*

Mother acknowledged her persistent housing instability. *See* N.T., 5/6/2024, at 12-15. Specifically, on cross-examination, Mother agreed that she had only had one stable residence for a period of six months in the last two years. *See id.* Further, Mother corroborated that she had no independent housing in over a year, as she had either been "in a shelter, in a jail, in a half-way house, or in a rehab program." *Id.* at 14. Mother also confirmed that she had not been employed since December of 2023 and was not eligible for employment through her current treatment program for six more weeks. *See id.* at 11, 15.

Mother's arguments fail because they are not relevant to the Section 2511(a)(8) analysis inasmuch as they are purely speculative as to her potential future remediation of the conditions that led to the Children's removal. *See* Mother's Brief at 14-15. When the petition was filed and Mother received notice in March of 2024, the record is clear that Mother had not yet entered her current treatment facility, had no stable housing as she remained incarcerated, and had no stable employment. *See* N.T., 3/26/2024, at 13, 15; N.T., 5/6/2024, at 6, 9, 11, 14-15; Affidavit of Service, S.I.R.S., 3/19/2024; Affidavit of Service, N.S.T.B., 3/19/2024. Therefore, the condition of the Children's removal from Mother, *i.e.*, her housing instability, remained unresolved at the time of the filing of the termination petition. *See id.* at 6-7, 13, 15; N.T., 5/6/2024, at 6, 9, 11, 14-15. As quoted above, Section 2511(b) provides that the orphans' court "shall not consider any efforts by the parents to remedy the conditions" pursuant to Section 2511(a)(8), which are "first initiated subsequent to the giving of notice" that a termination petition has been filed. 23 Pa.C.S.A. § 2511(b).

Along similar lines, Mother testified that she wished to provide care and control for the Children, but the orphans' court was not required to consider this testimony. *See* N.T., 5/6/2024, at 12; *see also M.A.B.*, 166 A.3d at 446 (reiterating that Section 2511(a)(8) does not necessitate an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal of the child). Indeed, the record is unquestionable that reunification was not

imminent at the time of the hearing. *See I.J.*, 972 A.2d at 11. Mother testified that her current treatment facility only allowed for one child to reside with her. *See* N.T., 5/6/2024, at 6, 11, 19. Mother stated that she would not complete the program or have the possibility to obtain independent housing for several more months. *See id.* Therefore, the record undoubtedly supports the orphans' court's finding that the conditions which led to the Children's removal from Mother's care continued to exist pursuant to the second prong of Section 2511(a)(8).

With respect to the third prong of Section 2511(a)(8), as Mother fails to present any argument, it is waived. *See* Mother's Brief at 14-15; *see also Commonwealth v. Noss*, 162 A.3d 503, 509 (Pa. Super. 2017) (finding waiver where Appellant failed to develop the issue in his brief) (citing *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) ("arguments which are not appropriately developed are waived")). Even if not waived, we would conclude the record supports the orphans' court's finding that termination of Mother's parental rights would best serve the Children's needs and welfare.

Ms. Donine testified that the Children had not been receiving proper medical and dental care before being removed by the Agency. *See* N.T. 3/26/2024, at 30-32. Mother's prolonged neglect of S.I.R.S.'s dental care resulted in the child having to "be sedated and ha[ve] four teeth removed due to severe decay[,] and she had to have a tooth capped." *Id.* at 32. Prior to Agency involvement, Mother reported to Children's Hospital of Pittsburgh that

she witnessed N.S.T.B. having a seizure. *See id.* at 31-32. Further testing and care, arranged by the foster parents, showed that N.S.T.B. never had seizure activity. *See id.* Mother's reports resulted in N.S.T.B.'s prescription for an unnecessary medication, which the hospital ultimately discontinued. *See id.* The Children did not receive the necessary early intervention services for their speech delays until they were removed from Mother's care. *See id.* at 30-32. Ms. Donine also testified that the Children were doing "extremely well" with their foster parents, who "have taken extra good care" of them. *Id.* at 29.

Overall, the record evidence supports that termination of Mother's parental rights would best serve the needs and welfare of the Children. Accordingly, we discern no abuse of discretion or error of law in the orphans' court finding that termination of Mother's parental rights was warranted pursuant to Section 2511(a)(8).

With respect to Section 2511(b), the orphans' court found that the Children had no bond with Mother. *See* Orphan's Court Opinion, S.I.R.S., 7/24/2024, at 12, 15, 17-18. Specifically, the court explained that Mother and the Children have "no relationship" due to the length of Mother's absence from their lives while she failed to achieve reunification. *See id.* Conversely, the court found that the Children were bonded to their foster parents and are in a "stable, secure[,] and loving environment." *Id.* at 17.

In her challenge to Section 2511(b), Mother does not assert that she has any bond with the Children; instead, she contends that the orphans' court inadequately evaluated her bond with them. *See* Mother's Brief at 15-17. Specifically, Mother argues that the Agency did not provide a "fresh" and "unbiased" evaluation of the bonds because the Agency had not had firsthand observation of Mother's interaction with the Children in approximately six months to a year. *Id.* at 16. Mother baldly asserts that the orphans' court should have required a more recent evaluation of the bond before terminating Mother's parental rights. *See id.* Mother's issue merits no relief.

Indeed, the record supports the orphans' court's finding that no present relationship exists between Mother and the Children. Ms. Donine testified that during a visit in April of 2023, Mother was taken from the visit by her probation officer and arrested, to which the Children had no reaction to and were not "affected by it at all." N.T., 3/26/2024, at 45-46. Ms. Donine stated that the last time Mother saw the Children in person was June 1, 2023, which is approximately one year prior to the termination hearings, as she failed to appear at the last two scheduled visits before her aforementioned incarceration and rehabilitation history began. *See id.* at 21. Since that time, the Agency received no reports of the Children missing Mother. *See id.* at 34.

Mother is correct that Ms. Donine confirmed that no one from the Agency had observed Mother with the Children in six months to a year due to her

extended period incarceration and rehabilitation. *See* N.T., 3/26/2024, at 47. However, this Court has stated:

> [T]he orphans' court is not required by statute or precedent to order a formal bonding evaluation to be performed by an expert. While it may be wise to conduct a bonding evaluation where there is evidence of a bond, in other cases direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child. Furthermore, the orphan's court is free to rely upon the assessments of social workers and caseworkers.

*In re J.N.M.*, 177 A.3d 937, 944-945 (Pa. Super. 2018) (internal citations omitted). Ms. Donine's foregoing testimony regarding the lack of bond between Mother and the Children at the time of the termination hearing was sufficient for the orphans' court to rely upon for its Section 2511(b) assessment. *See id.* Most importantly, Mother cites no legal authority for her assertion that a more recent evaluation of the bond is required. The court conducted the required evaluation of the Children's bond with Mother. *See E.M.*, 620 A.2d at 485; *K.T.*, 296 A.3d at 1109-1110.

It is undisputed that Mother requested additional visitation following her final visit with the Children. Significantly, these requests were subsequent to the Children's goal change in June of 2023, which was later affirmed by this Court. *See Interest of S.S., supra*. The Agency was therefore not required to provide further services to Mother after the goal change to adoption, which includes visitation. *See In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) ("Once the goal is changed to adoption, CYS is not required to provide further services.").

Additionally, the orphans' court correctly considered the Children's bond with their pre-adoptive foster parents. Ms. Donine testified on direct examination:

Q: . . . [W]hat do you see in the bond with . . . the foster parents?

A: When I see the [C]hildren interact with the foster parents, and when Justice Works sees them interact with them through the visits, they refer to them as mom and dad, to me, they appear extremely attached and bonded with the foster parents. I have seen them call them mom and dad.

N.T., 3/26/2024, at 34. Accordingly, we discern no abuse of discretion or error of law in the orphans' court's conclusion that the Agency met its evidentiary burden pursuant to Section 2511(b).

Based on the foregoing, we affirm the orders pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b).

Orders affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/27/2025