J-S66032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: I.M.W. AND C.F.W., Minors | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.W., Mother | No. 1079 MDA 2014 |

Appeal from the Decrees and Orders entered June 5, 2014,
in the Court of Common Pleas of Dauphin County,
Orphans' Court, at No(s): 17 AD 2012, 9 AD 2014,
CP-22-DP-0000097-2011, CP-22-DP-0000115-2012

BEFORE:  BENDER, P.J.E., SHOGAN, and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 09, 2014**

J.W. ("Mother") appeals from the Decrees and Orders granting the Petitions filed by the Dauphin County Social Services for Children and Youth ("the Agency") to involuntarily terminate her parental rights to her son, I.M.W., and daughter, C.F.W. (collectively "Children"), pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, *see* 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and to change their permanency goal to adoption pursuant to section 6351 of the Juvenile Act, *see* 42 Pa.C.S.A. § 6351.[1]  We affirm.

I.M.W. was born in August 2011, during the marriage of Father and Mother.  Three days after his birth, I.M.W. was placed in the custody of the

---

[1] The trial court terminated the parental rights of the Children's father, C.W. ("Father"), and confirmed his consent to their adoption on March 6, 2014. Father has not filed an appeal, nor is he a party to this appeal.

Agency based upon Father's and Mother's lack of progress in meeting their service objectives with respect to the dependencies of I.M.W.'s older siblings. The Agency placed I.M.W. in a foster home, a pre-adoptive resource for I.M.W., with his older half-sister and two female cousins. I.M.W. has special needs, including delayed vision, a slightly underdeveloped brain, and a wandering eye. The trial court adjudicated I.M.W. dependent on August 24, 2011, and a placement goal of reunification was established. The Agency established Family Service Plan ("FSP") goals for Mother.

On March 2, 2012, the Agency filed a Petition against Mother for a goal change to adoption and the involuntary termination of parental rights. On September 10, 2012, the trial court entered a Decree, changing the placement goal to adoption and involuntarily terminating Mother's parental rights pursuant to subsections (a)(1), (2), (5), and (b). Mother appealed and this Court reversed the Decree and remanded the matter to the trial court, based on the absence of sufficient evidence to support the termination under subsections (a)(1), (2), (5), and (b). ***See In the Interest of I.M.W.***, 75 A.3d 553 (Pa. Super. 2013) (unpublished memorandum). Specifically, this Court concluded that there was insufficient evidence to show that Mother had failed to comply with her FSP objectives, and that it appeared that Mother was making progress on these objectives. ***See id***.

While the appeal regarding I.M.W. was pending, in late December 2012, Mother gave birth to C.F.W. In the days following C.F.W.'s birth, the

Agency filed a dependency Petition with respect to C.F.W. Following hearings, the trial court entered an Order, finding that aggravated circumstances existed under 42 Pa.C.S.A. § 6302, based on the recent termination of Mother's parental rights to I.M.W. The trial court entered a separate Order, adjudicating C.F.W. dependent and changing the permanency goal to adoption. On September 9, 2013, this Court affirmed the adjudication of C.F.W. as dependent, but vacated and remanded the goal change and aggravated circumstances orders, as those Orders had been premised on the Decrees relating to I.M.W., which this Court had previously reversed. *See In the Interest of C.W.*, 87 A.3d 376 (Pa. Super. 2013) (unpublished memorandum).

On June 18, 2013, October 17, 2013, and November 14, 2013, the trial court held additional permanency review hearings with regard to I.M.W. On April 9, 2013, July 16, 2013, October 17, 2013, November 14, 2013, and March 6, 2014, the trial court held additional permanency review hearings with regard to C.F.W.

On February 18, 2014, the Agency filed the Petitions seeking to terminate Mother's parental rights, and to change the permanency goal for the Children to adoption. On that same date, the Agency filed a Petition to confirm Father's consent to adoption as to the Children. On March 6 and 10, 2014, the trial court held hearings on the Petitions. The trial court set forth

a thorough review of the testimony presented at the hearings, which we adopt herein.  **See** Trial Court Opinion, 7/23/14, at 2-8.[2]

On June 4, 2014, in a transcribed proceeding in court, the trial court granted the Petitions to terminate Mother's parental rights to the Children, and to change the permanency goal to adoption.[3]  The trial court entered the Decrees and Orders on the following day.  On June 26, 2014, Mother filed a Notice of Appeal,[4] along with a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

---

[2] At the permanency review hearing, Mother's counsel stipulated to the admission into the record of the testimony of Candra Chang, the Children's family therapist at Pressley Ridge.  **See** N.T., 3/6/14, at 73-74.  Further, Mother did not present any witnesses, and neither the Agency nor Mother offered any exhibits for admission into evidence.

[3] Mother's counsel was present in the courtroom, but Mother failed to appear, despite attempts to provide notice to her.

[4] Despite the fact that the trial court entered separate Decrees and Orders for each child, Mother only filed one Notice of Appeal.  In her Notice of Appeal, Mother lists both children in the caption and the respective docket numbers of the Children's cases.  We recognize that generally "taking one appeal from separate judgments is not acceptable practice and is discouraged."  **Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.**, 263 A.2d 448, 452 (Pa. 1970); **see also** Pa.R.A.P. 341, Note (stating that where "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.").  While Mother improperly filed a single Notice of Appeal, we will not quash the appeal, as Mother plainly intended to appeal the Decrees and Orders of the Children and this case involves the termination of parental rights.  **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (stating that "[t]he extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules") (citation omitted); **see also id**. at 748 (declining to quash or dismiss the appeal based upon this Court's objective to expedite the disposition of children's fast track cases).

In her brief on appeal, Mother raises the following issues:

1. Whether the trial court abused its discretion in changing the goal to adoption?

2. Whether the trial court committed reversible error by terminating [Mother's] parental rights?

Mother's Brief at 10.[5]

Mother argues that the Agency has failed to prove by clear and convincing evidence that her parental rights to Children should have been terminated. *Id*. at 33. Mother argues that, since this Court's reversal of the Decrees with regard to I.M.W. in April 2013, she has made significant progress on her FSP objectives, including completing reunification services, completing a parenting class, taking domestic violence counseling, and addressing her mental health issues. *Id*. at 27-30. Mother asserts that the Agency failed in its responsibility to reunify her with Children and improperly placed the burden of reunification on her. *Id*. at 30-31, 32. Mother contends that the Agency purposely created confusion with regard to her visitation rights, and then blamed her for failing to visit the Children. *Id*. at 31-32. Mother claims that the FSP's only remaining objective is her housing,

---

[5] Mother waived her first issue regarding the goal change by her failure to support this issue with any argument or citation to case law. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *see also Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (stating that arguments that are not properly developed are waived). Thus, we will only address Mother's claims regarding the termination of her parental rights.

which she asserts is problematic only because of her lack of financial resources. *Id*. at 33. She urges that the lack of financial resources and affordable housing is an insufficient basis upon which to terminate her parental rights. *Id*.

Further, Mother alleges that under section 2511(b), she has been financially dependent on Father's Social Security benefits, which were the source of income to pay for housing, and, since she is no longer in a relationship with Father, and has no employment, she has limited financial resources. *Id*. She also complains that there was no bonding assessment conducted in this matter. *Id*. at 28.[6]

We review an appeal from the termination of parental rights in accordance with the following standard:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner

---

[6] In her Summary of the Argument, Mother asserts that the trial court never ruled on a joint motion for supersedeas filed on February 22, 2013. Mother's Brief at 21. However, there is no entry for a joint motion for supersedeas on the trial court's docket. Thus, we cannot grant relief on this assertion.

"to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **Id**. (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re M.G.**, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, "we will affirm even if the record could also support the opposite result." **In re Adoption of T.B.B.,** 835 A.2d 387, 394 (Pa. Super. 2003).

Satisfaction of any one subsection of section 2511(a), along with consideration of section 2511(b), is sufficient for the involuntary termination of parental rights. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Mother's parental rights based upon section 2511(a)(2) and (b), which state the following:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003); *see also In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

Regarding section 2511(b), the court inquires whether the termination of Mother's parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "Intangibles such as love, comfort, security, and stability

are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*.; *see also In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (stating that where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists). Courts are not required to order a formal bonding evaluation by an expert and may assess the parental bond upon the observations and evaluations of social workers and case workers. *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). Additionally, trial courts "should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). Finally, the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child under section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008).

Here, the trial court addressed Mother's claims and determined that the Petitions to involuntarily terminate her parental rights to Children, and to change their permanency goal to adoption, were properly granted. *See* Trial Court Opinion, 7/23/14, at 10-12; *see also id*. at 2-8 (wherein the trial court sets forth a review of the relevant testimony presented at the

hearing). After a careful review of the record in this matter, we conclude that there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding section 2511(a)(2); that Mother is incapable of parenting the Children, who have Fragile X syndrome; and that, even after a team worked with Mother to understand their needs, the conditions that led to their removal still exist, and will not be remedied by Mother in the future.

Under section 2511(b), the competent evidence of record supports the trial court's determinations that the termination of Mother's parental rights best serves the Children's needs and welfare. Indeed, competent evidence supports the trial court's finding that there is an absence of any bond with Mother, as both Children were placed in foster care essentially at birth. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (stating that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated). Thus, the trial court did not abuse its discretion in finding competent evidence to support the termination of Mother's parental rights under section 2511(a)(2) and (b). *See In re Adoption of S.P.*, 47 A.3d at 826-27.

Decrees and Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2014