J-S25029-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.R.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.D.W., NATURAL | : | |
| FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1733 WDA 2017 |

Appeal from the Order October 5, 2017
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s): 34 of 2017

BEFORE: GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY PANELLA, J. FILED MAY 31, 2018

J.D.W. ("Father") appeals the order of the Court of Common Pleas of Westmoreland County that involuntarily terminated his parental rights to his son, J.R.W. ("Child") (born May 2015), pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938.[1] We affirm.

We summarize the relevant facts and procedural history as follows. Child was born May 2015. See Trial Court Order, 10/5/17, at ¶ 5. Child became known to the Westmoreland County Children's Bureau ("WCCB") after he was born addicted to methadone. See id. Child was taken into emergency custody on October 9, 2015 when his birth mother was found unconscious at the wheel of her car at a red light and Child was crying in the back seat of the car. See id., at ¶ 6. A WCCB caseworker attempted to contact Father to

_____

[1] Child's birth mother, J.L.C., died prior to the entry of the order in question. See Trial Court Order, 10/5/17, at ¶ 4.

retrieve the child but she was unable to do so. See id. Child was placed in emergency foster care. See id. And Child was adjudicated dependent on October 27, 2015. See id., at ¶ 7. Father was ordered to undergo drug and alcohol assessment, comply with recommended treatment, comply with random drug screening, participate in a parenting assessment and potential parenting instruction, and obtain and maintain appropriate stable housing. See id.

From October 2015 through May 2017 Father exhibited little to no compliance with the requirements set forth by WCCB and Father maintained limited contact with the agency. See id., at ¶ 8. Father participated in no services or assessments offered through WCCB, including drug and alcohol evaluation and treatment and parenting assessment and instruction. See id., at ¶ 9. Father completed court-ordered drug and alcohol rehabilitation programs through criminal court proceedings, but did not re-enroll in drug and alcohol treatment in 2017 as recommended by WCCB. See id. at ¶ 10. Out of sixty attempted screenings, Father completed three, with two negative results and one positive result for cocaine. See id., at ¶ 11.

Supervised visitation was ordered for Father through Wesley Spectrum. See id., at ¶ 12. The service provider offered three weekly visits of three hours each to Father from July 2015 through May 2017. See id., at ¶ 12. Father attended just five supervised visits over the course of Child's

placement. *See id.* These visits occurred on November 10, 2015,[2] December 15, 2015, January 5, 2016, March 29, 2016 and May 17, 2016. *See id.*

Father testified that his work schedule of sixty to seventy hours per week prevented regular visitation. *See id.*, at ¶ 13. The visitation supervisor testified that Father was offered flexible visitation time, as well as transportation to and from visits, but Father did not avail himself of these options. *See id.* at ¶ 14. Father's last visitation with Child was in May 2016 at which time Father attended approximately just one hour—of an eight-hour birthday visitation. *See id.*, at ¶ 15. During the visits that Father attended, the supervisor noted that Father was inattentive to Child and would often nod off. *See id.*, at ¶ 16. The supervisor testified that Child was cautious around Father, potentially did not recognize him, and appeared fearful and uneasy around Father. *See id.*, at ¶ 17. Father's last contact with Child occurred in December 2016 when Father visited Child while Child was in the hospital due to a neurological problem. *See id.*, at ¶ 18.

Child resided in the same pre-adoptive home in which Child was placed in October 2015. *See id.*, at ¶ 22. The trial court noted that the home provided a safe and loving environment for Child. *See id.*, at ¶ 22. The foster family

---

[2] While the trial court in its order indicated that this visit occurred November 11, 2015, this appears to be a typographical error based on the testimony and documentary evidence submitted. *See* N.T. at 6, Exhibit 1 at 2.

provided for Child's needs, and Child was bonded with the foster family. See id., at ¶ 24.

On March 16, 2017, WCCB filed a petition seeking the involuntary termination of Father's parental rights to Child. On September 28, 2017, the trial court held a hearing on the petition.[3] At the hearing, WCCB presented the testimony of Lisa Zamborsky, visitation supervisor at Wesley Spectrum, and Jessica Fend, a caseworker for WCCB. Father testified on his own behalf. At the time of the hearing, Father was incarcerated and awaiting sentencing. See id., at ¶ 20.

On October 5, 2017, the trial court entered an order involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b) of the Adoption Act. Father timely filed his notice of appeal and concise statement of matters complained of on appeal.[4]

On appeal, Father raises the following issue for our review: "Whether the trial court abused its discretion because the weight of the evidence does

_____

[3] On May 5, 2017, the trial court appointed counsel for Child as well as a separate guardian ad litem for Child. As a result of a conflict, the trial court appointed substitute counsel for Child on May 8, 2017. Child's counsel was present at the involuntary termination hearing, and has filed a brief on behalf of Child on appeal.

[4] Father had thirty days from October 5, 2017, to file a timely notice of appeal. Pa.R.A.P. 903(a) (notice of appeal must be filed "within 30 days after the entry of the order from which the appeal is taken"). Because November 4, 2017, was a Saturday, Father timely filed his notice of appeal on November 6, 2017. See 1 Pa.C.S.A. § 1908.

- 4 -

not support the involuntary termination of Father's parental rights?" Father's

Brief, at 6.

We review an appeal from the termination of parental rights with the

following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

In re Adoption of S.P., 47 A.3d 817, 826-827 (Pa. 2012) (internal citations

omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

Id. (quoting In re J.L.C., 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of § 2511(a). See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

Here, we will focus our analysis on subsections (a)(2) and (b).[5]

Section 2511 provides, in relevant part, as follows:

§ 2511. Grounds for involuntary termination

(a) General rule. The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

_____

[5] The argument section of Father's Brief references only 23 Pa.C.S.A. § 2511(a)(2) and contains no apparent argument regarding subsection (a)(5) or (a)(8). Father's failure to develop any legal argument with regard to these two subsections has waived any claims he might have raised at to these subsections. See, e.g., Lackner v. Glosser, 892 A.2d 21, 29–30 (Pa. Super. 2006).

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations. The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have stated that

[i]n order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).

Here, Father argues that the trial court abused its discretion claiming that the weight of the evidence does not support the involuntary termination of Father's parental rights. In Father's brief, Father acknowledges that "he did not complete all services as requested by the Children's Bureau and see his son as often as he would have liked." Father's Brief, at 18. However, he argues

that "[i]n the end, while it is apparent that Father did not complete all services, the evidence does not clearly demonstrate by a clear and convincing fashion that his rights be terminated." Id. Father also asserts that the trial court penalized him for his work schedule. See id., at 17.

Contrary to Father's argument, the court, based on the testimony presented, determined that: Father exhibited little to no compliance with the requirements set forth by WCCB; participated in no services or assessments offered through WCCB, including the drug and alcohol evaluation and treatment and parenting assessment and instruction; out of sixty attempted screenings, Father completed three, with one of those testing positive for cocaine; over the course of Child's placement, Father attended only five visits through Wesley Spectrum; Father's work schedule of sixty to seventy hours per week prevented regular visitation; Father was inattentive to Child and would often nod off during the visits; Father's last contact with Child occurred in December 2016 when Father visited Child while Child was in the hospital; and, at the time of the hearing, Father was incarcerated and awaiting sentencing.

The trial court determined that the repeated and continued incapacity, abuse, neglect or refusal of Father had caused Child to be without essential parental care, control or subsistence necessary for Child's physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Father. After our careful review of

the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. Accordingly, we find that the trial court's determinations regarding subsection (a)(2) are supported by sufficient, competent evidence in the record.

If the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). In reviewing the evidence in support of termination under subsection (b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. ... [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

In re: T.S.M., 71 A.3d 251, 267 (Pa. 2013) (most citations and internal quotation marks omitted; brackets added and in original).

Subsection (b) does not mandate a formal bonding evaluation. See In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010). And when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well." Id. (citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances ... where direct

- 9 -

observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." In re K.Z.S., 946 A.2d 753, 762 (Pa. Super. 2008) (citation omitted). "The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." Id. (citation omitted).

In addressing subsection (b), the court noted "that testimony by the visitation supervisor indicated that there is little if any bond between [Child] and Father, as shown by the child's behavior[] at Father's sporadic visitation. The caseworker noted a strong bond between [Child] and his foster family." Trial Court Order, 10/5/17, at ¶ 30. The court also found that "[Child] is currently thriving and well cared for, physically and emotionally." Id., at ¶ 28.

Our review of the record supports the court's finding that Child has little if any bond with Father and that the termination of Father's parental rights would be in the best interest of the minor child. Based on the record before us, we discern no error or abuse of discretion in the trial court's conclusion that Child's developmental, physical and emotional needs are best met by terminating Father's parental rights. Accordingly, as the trial court's determination is supported by competent evidence in the record, we affirm the trial court order.

Order affirmed.

Judge Ott joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/31/2018