J-S63002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.G., FATHER | : | No. 2120 EDA 2019 |

Appeal from the Order Entered July 8, 2019
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0002511-2017

BEFORE:   GANTMAN, P.J.E., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY GANTMAN, P.J.E.:          **FILED JANUARY 08, 2020**

Appellant, J.G. ("Father"), appeals from the order entered in the Philadelphia County Court of Common Pleas that extended the dependency adjudication of J.G. ("Child") and found Father was the perpetrator of child abuse against Child.  We affirm.

The relevant facts and procedural history of this case are as follows. Father and N.H. ("Mother") are the natural parents of Child, born in August 2017.  On September 18, 2017, the Philadelphia Department of Human Services ("DHS") filed a dependency petition for Child based on a lack of parental care and supervision.  The court adjudicated Child dependent on September 26, 2017, but permitted Child to remain at home with Father and Mother.  A few months later, on December 20, 2017, Child was admitted to St. Christopher's Hospital for Children based on his pediatrician's concerns

_____

[*] Retired Senior Judge assigned to the Superior Court.

regarding Child's failure to thrive. At four months old, Child was severely underweight and malnourished. Child was also dirty and had multiple rib fractures in various stages of healing. Due to Child's condition, the hospital referred Child to DHS.

On December 27, 2017, DHS filed an application for an order of protective custody of Child, which the court subsequently granted. Following a shelter care hearing on December 28, 2017, the court placed Child in foster care upon his release from the hospital. DHS filed a second dependency petition on January 18, 2018, requesting a finding of abuse against Father and Mother. Following hearings on April 2, 2019, and July 8, 2019, the court entered an order extending the dependency adjudication of Child and finding Father and Mother had committed child abuse against Child. On July 25, 2019, Father filed a timely notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.[1]

Father raises the following issues for our review:

> DID THE TRIAL JUDGE RULE IN ERROR THAT THE PHILADELPHIA CITY SOLICITOR'S OFFICE [MET] ITS BURDEN OF PROOF THAT THERE SHOULD BE A FINDING OF CHILD ABUSE UNDER THE CHILD PROTECTIVE SERVICES ACT, 23 PA.C.S. SEC. 6303[?]
>
> DID THE TRIAL COURT JUDGE ERR IN ALLOWING FATHER'S CRIMINAL DOCKET AND CRIMINAL COURT SUMMARY IN AS PART OF THE CHILD ABUSE HEARING[?]

---

[1] Mother filed a separate appeal from the order, which is docketed at No. 2119 EDA 2019 (J-S63001-19).

- 2 -

(Father's Brief at 2).[2]

Our standard of review from an adjudication of dependency:

> [R]equires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the [trial] court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (internal citation omitted). In other words: "Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate." *In re D.A.*, 801 A.2d 614, 618 (Pa.Super. 2002) (*en banc*).

During the course of dependency proceedings, a trial court may find a parent to be the perpetrator of child abuse as defined under the Child

_____

[2] Concerning his second issue, Father's appellate brief contains only a single-paragraph argument with no citations to any supporting legal authority. Father's failure to develop his issue on appeal compels waiver. *See Lackner v. Glosser*, 892 A.2d 21 (Pa.Super. 2006) (explaining arguments must adhere to rules of appellate procedure and arguments which are not appropriately developed are waived; arguments not appropriately developed include those where party has failed to cite relevant authority to support contention); Pa.R.A.P. 2119(a). Moreover, even if properly preserved, Father's claim would merit no relief for the reasons stated in the trial court's opinion. (*See* Trial Court Opinion, filed August 28, 2019, at 5) (finding: testimony indicated Father was with Child often because he was under house arrest; Father's criminal summary was also relevant to show if Father was incarcerated in December 2017, which could have negated finding of child abuse against Father; Father showed no prejudice from admission of criminal summary).

Protective Services Law ("CPSL"). *In Interest of J.M.*, 166 A.3d 408, 421-22 (Pa.Super. 2017). The "CPSL does not create or include a separate action for child abuse, and, under the Juvenile Act, a finding of abuse can only be made as part of a dependency proceeding in which abuse is alleged." *In Interest of R.T.*, 592 A.2d 55, 59 (Pa.Super. 1991). *See also* 23 Pa.C.S.A. § 6370(b)(2)(i) (stating that if county agency deems it appropriate in dependency or delinquency proceeding, including instance in which alleged perpetrator has access or poses threat to child, county agency may petition court for finding of child abuse).

The CPSL defines "child abuse," in relevant part, as follows:

**§ 6303. Definitions**

**(b.1) Child abuse.**—The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

(1) Causing bodily injury to a child through any recent act or failure to act.

\* \* \*

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

\* \* \*

(7) Causing serious physical neglect of a child.

\* \* \*

23 Pa.C.S.A. § 6303(b.1)(1),(5),(7). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S.A. §

- 4 -

6303(a). "Serious physical neglect" is defined as, *inter alia*, "[t]he failure to provide a child with adequate essentials of life, including food, shelter, or medical care" which "endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development, or functioning." *Id.* The existence of "child abuse" pursuant to Section 6303(b.1) must be proved by clear and convincing evidence. *In re L.Z.*, 631 Pa. 343, 361, 111 A.3d 1164, 1174 (2015). Under certain circumstance, however, the identity of an abuser may be established by *prima facie* evidence. *Id. See also In re L.V.*, 127 A.3d 831, 837-38 (Pa.Super. 2015).

> [E]vidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the…agency and the rebuttal of the parent or responsible person.

*In re L.Z., supra* at 379, 111 A.3d at 1185 (internal footnote omitted).

Significantly, courts do not require a parent's physical presence during the injury for "abuse" to occur. *Id.* at 377, 111 A.3d at 1184. To the contrary, our Supreme Court has stated, "parents are always responsible for their children, absent extenuating circumstances…." *Id.* Moreover, "[t]he inclusion of 'omissions' encompasses situations where the parent or responsible person

is not present at the time of the injury but is nonetheless responsible due to his…failure to provide protection for the child." ***Id***.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Vincent Furlong, we conclude Father's remaining issue merits no relief. The trial court comprehensively discusses and properly disposes of the question presented. (***See*** Trial Court Opinion, filed August 28, 2019, at 3-5) (finding: Dr. Marita Lind, Director of Child Protection Program at St. Christopher's Hospital and expert in child abuse, testified that Child was underweight because Child was not being fed properly; Dr. Lind additionally testified that there were no medical explanations for Child's fractured ribs other than compression, squeezing, or direct blows to Child's body; Mother admitted to DHS representative that she had "trouble" mixing Child's formula; neither parent offered explanation for Child's fractured ribs; court found credible testimony of child abuse expert and DHS representatives; Father spent extended periods of time with Child and should have known how to feed Child properly; Father also should have noticed Child's obvious discomfort from fractured ribs; furthermore, Child recovered after placement in foster care; evidence was sufficient to show Father was perpetrator of abuse based on his acts or omissions). The record supports the court's decision; therefore, we see no reason to disturb it. Accordingly, we affirm based on the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/8/20</u>

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
PHILADELPHIA COUNTY COURT OF COMMON PLEAS

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | FAMILY COURT DIVSION |
| J.G, a Minor | : | CP-51-DP-0002511-2017 |
| D.O.B. 08/2017 | : | FID # 51-FN-001198-2016 |
| | : | 2119 EDA 2019 |
| Appellant J.G., Father | : | |

## OPINION

## PROCEDURAL HISTORY

On April 2, 2019 and July 8, 2019, the trial court held hearings to determine
if Father was a perpetrator of child abuse as to Child J.G. ("Child"). Father was
present at the hearing and represented by counsel. After extensive testimony, the
court made a finding of child abuse versus Father. A Notice of Appeal was filed by
Father on July 25, 2019.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Father's Statement of Matters Complained of on Appeal is set forth below
in verbatim:

1.  The Judge ruled in error that the Philadelphia City Solicitor's Office met
    its burden of proof to prove that he was a perpetrator of child abuse
    under 23 Pa.C.S. §6303. The burden in a child abuse hearing is clear
    and convincing. At the hearing the City and DHS did not put on enough
    evidence to meet its burden of proof that Father should be considered a
    perpetrator of child abuse under 23 Pa.C.S. §6303.

2.  The Judge ruled in error by allowing Father's criminal docket and
    summary in as evidence as part of the child abuse hearing. The evidence
    was not relevant. If there was any relevance the prejudicial effects
    greatly outweighed the relevance. Father's criminal record had nothing
    to do with the child abuse allegations.

## FINDINGS OF FACT

On December 2d, 2017, following an examination by his pediatrician, Child was referred to St. Christopher's Hospital for Children and a subsequent report was made to the Philadelphia Department of Human Services ("DHS") based on observations of Child's failure to thrive. Child was also foul smelling and dirty. (Statement of Narrative-DHS Exhibit 6). DHS issued a Child Protective Services ("CPS") Report which indicated that Mother was not properly mixing Child's formula causing the Child to be severely underweight and malnourished. Upon further medical examination, it was determined that Child had multiple fractured ribs. Based upon these findings, Child was hospitalized for several of weeks during which time Child gained significant weight and Child's fractures healed. Child was placed in a foster care home and since placement has never incurred a fractured bone and is well nourished and thriving. Neither Mother nor Father offered a satisfactory explanation for Child's fractured ribs or why Child was severely underweight. After extensive testimony, the court made a finding of child abuse versus Father on July 8, 2019. A Notice of Appeal was filed by Father on July 25, 2019.

## LEGAL ANALYSIS

In order for the court to determine if a parent is a perpetrator of child abuse pursuant to the Child Protective Services Law ("CPSL"), DHS, as the moving party, must demonstrate by clear and convincing evidence that the statute is satisfied. Since proof of child abuse is often circumstantial, the CPSL permits evidence that would normally be barred under the Juvenile

Act. Evidence that a child has suffered abuse of such a nature as would ordinarily not be sustained or exist *except* by reason of the acts or omissions of the parents[1].

## I. The trial court did not commit reversible error when it made a finding of child abuse against Father

During the hearing on April 2, 2019, the trial court heard testimony from Dr. Marita Lind, the Director of the Child Protection Program at St. Christopher's Hospital for Children in Philadelphia and an expert in child abuse. (N.T. April 2, 2019 Page 7). Dr. Lind concluded that the Child was underweight due to the Child not being properly fed. This appeared unusual to Dr. Lind since this was Mother's fifth child. (N.T. April 2, 2019 Pages 30-32). Dr. Lind indicated that there was probably no other medical cause for Child being underweight and noted (1) Child's weight increased dramatically

---

[1] 23 Pa.C.S.A. § 6381 **General rule.** --In addition to the rules of evidence provided under 42 Pa.C.S. Ch. 63 (relating to juvenile matters), the rules of evidence in this section shall govern in child abuse proceedings in court or in any department administrative hearing pursuant to section 6341 (relating to amendment or expunction of information).

**(b) Reports of unavailable persons.** --Whenever a person required to report under this chapter is unavailable due to death or removal from the jurisdiction of the court, the written report of that person shall be admissible in evidence in any proceedings arising out of child abuse other than proceedings under Title 18 (relating to crimes and offenses). Any hearsay contained in the reports shall be given such weight, if any, as the court determines to be appropriate under all of the circumstances. However, any hearsay contained in a written report shall not of itself be sufficient to support an adjudication based on abuse.

**(c) Privileged communications.**--Except for privileged communications between a lawyer and a client and between a minister and a penitent, a privilege of confidential communication between husband and wife or between any professional person, including, but not limited to, physicians, psychologists, counselors, employees of hospitals, clinics, day-care centers and schools and their patients or clients, shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse.

**(d) Prima facie evidence of abuse.** --Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

**(e) Child victims and witnesses.** --In addition to the provisions of this section, any consideration afforded to a child victim or witness pursuant to 42 Ph.C.'s. Ch. 59 Such. D (relating to child victims and witnesses) [1] in any prosecution or adjudication shall be afforded to a child in child abuse proceedings in court or in any department administrative hearing pursuant to section 6341.

as result of proper feeding; (2) there was no indication that the Child was born unhealthy; and (3) the Child had adequate calcium and Vitamin D levels and had no symptoms of acid reflux. (N.T. April 2, 2019 Pages 16-21). Dr. Lind also indicated that the Child's bone density was normal. (N.T. April 2, 2019 Page 36). Additionally, there was no medical explanation for the Child's fractured ribs other than compression, squeezing or direct blows to the Child's body. (N.T. April 2, 2019 Pages 28-29). Dr. Lind testified that she expected that someone familiar with the Child would have noticed the Child experienced discomfort from the rib fractures because Dr. Lind noticed the Child's discomfort during her initial examination of the Child.

During the hearing on July 8, 2019, Ms. Amanda Aquila, a DHS Representative, testified that she interviewed Mother who indicated that she was having trouble mixing the Child's formula and that she and Father were providing care proper care for the Child. (N.T. July 8, 2019 Page 13-14). Ms. Aquila also testified that she interviewed Father and he was not cooperative during the interview. Ms. Aquila indicated during her testimony that Father was with the Child for extended periods of time because he was under house arrest for a criminal matter. Both parents indicated that other family members also took care of the Child. The Parents, however, could offer no explanation for the Child's fractured ribs. Ms. Aquila testified that she believed that it happened during a period of time when Mother and Father and possibly other family members had access to the Child. Mr. Francis James, a DHS

Representative, testified that Child experienced no fractured bones after being placed in foster care.

The testimony of Dr. Lind and Ms. Aquila and Mr. James was accorded great weight by the trial court. Special deference was given to Dr. Lind's conclusion that the rib fractures were not accidental and that Child's weight gain was immediate and significant upon being properly fed. Father was a caregiver who spent entire days with the Child, who should have properly fed the Child and noticed the Child's discomfort from his fractured ribs.

Counsel for Father alleges that the introduction of the Father's criminal record and conviction was not relevant. Testimony indicated Father spent time with Child because he was under house arrest for a criminal matter. Moreover, the trial court also wanted to determine if the Father was in custody in December 2017, which would have actually become evidence tending to negate the charge of child abuse as to Father. Furthermore, this was not a jury trial and Counsel for the Father has offered no evidence that the trial court's ability to reason the facts and laws applicable to this case was prejudiced by the introduction of Father's criminal history. Although no person ever admitted to striking the Child or depriving the Child of food, the Child's fractured ribs, poor health and poor hygiene and immediate recovery when placed in foster care were indications of child abuse based upon both Parents' acts or omissions.

## CONCLUSION

After review of the testimony and supporting documentation, the trial court finds it determined correctly that there be a finding of child abuse versus Father. For the foregoing reasons, this court requests that the July 8, 2019 Order be **AFFIRMED.**

**BY THE COURT**

Date: 8-28-19

_____
Vincent Furlong, J.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above-captioned

Opinion was filed on the undersigned date in the Court of Common Pleas of

Philadelphia County Family Court Division and served by first class mail

upon the following:

Paul McLaughlin, Esquire
Philadelphia Law Department
One Parkway
1515 Arch Street-16th Floor
Philadelphia, PA 19102
Attorney for DHS

Mary Beth Cherniak, Esquire
P.O. Box 6972
Wyomissing, PA 19610

Ruth Mabel Brice, Esquire
1800 JFK Blvd Suite 300
Philadelphia, PA

Jeffrey C. Bruch, Esquire
1515 Market Street Suite 1200
Philadelphia, PA 19102

Date: 8-28-19

Vincent Furlong, J.